All right, our last case this morning is number 21-10716, Global Digital Solutions v. Grupo Rontan. Mr. Howard. Thank you, Your Honor. May it please this Court, my name is Bailey Howard, and I represent the appellants in this case, the Sellers. Your Honors, this is a case that's about a contract, and based on the positions the parties have taken in the briefing, this Court must now reverse the District Court's judgment and remand for further proceedings. The only question is what form exactly that reversal will take, what its detail and its content and its scope will be. I'll begin by explaining why, under the facts established by the default in the well-pleaded allegations of the complaint, and under the functions of warranties and conditions precedent in Florida law, GDSI is not entitled to recover any incidental damages at all in this case. And then I'll proceed by explaining why, if this Court were to conclude that GDSI can recover some incidental damages, the specific award the District Court entered must nonetheless be reversed because it's not reasonably certain, is inconsistent with, and in some cases outright contradicted by, the evidence in the record. And then third and finally, Your Honors, I'll explain why GDSI, having elected its remedies, should not be permitted a second bite at the apple and revisiting that election of remedies. So, to begin with, Your Honors, GDSI cannot recover any incidental damages in this case because GDSI has waived the substance of the warranties out of which it claims those damages arise. It has taken the position... But what is confusing to me about that argument is that, I mean, it's confusing for a few different reasons, but one of them is, for example, the misrepresentations about the tax liability. That was not a precondition to the closing. I mean, that is a warranty and a breach, a backwards-looking misrepresentation under Section 5, and that seems to me to be completely different from and distinct from your client's failure to fulfill the condition precedent under Section 3.1.4. And my concern is that the contract itself says that the parties can get out of the contract, but they can also get damages. They can get specific performance and damages. And so, if your reading were correct, there'd be no way that anybody could ever get specific damages under the contract. So maybe you want to address that. Certainly, Your Honor. I agree that there would be no way any, well, no way that GDSI, anyway, could get incidental damages alongside specific performance under this contract, having waived that specific condition precedent. Now, as the parties explore at length in the briefs, as a general rule, a party can get incidental damages alongside specific performance, and that's something that sellers are not contesting here. And in fact, if that specific condition precedent, and then the, I believe it's the seventh condition precedent, talks about the debt limits specifically, if those two conditions precedent weren't in the contract, then GDSI could waive all the conditions precedent and still recover incidental damages. But because there's this specific condition precedent that says that the contract will not go, that the closing will not take place, if the representations and the warranties of the sellers are not all true and correct, true, complete, and correct as of the date of the closing, then by waiving that condition precedent, you take the position that the truthfulness of the warranties is not required, is not material to the transaction. Go ahead, please. Go ahead. That's okay. Go ahead. So this is a bit of a pivot, but the same question, I mean, the same basic issue. I mean, don't you have a threshold problem that the district court said that you had forfeited this argument before the district court and you haven't, you haven't made reference to any of the traditional sort of access now exceptions to that forfeiture that would allow us to consider it. I haven't made reference to those exceptions, Your Honor, because there was no forfeiture here. Explain that to me because the district court anyway clearly thought there was and said in fact the forfeiture was so bad I'm declining to consider it. So, the district court was was incorrect about that because it was actually the district court itself that raised this argument in the January 2020 status conference, the district court referred to and it was the sort of parable of the house and whether you can get a house, that was a sufficient raising of this issue to preserve this issue for later on, but even if there was that even if that was a waiver, then, and the district court did not abuse its discretion and concluding that was a waiver at that time, it's important to remember that at the time that supposed waiver occurred sellers were pro se, and I'm sure that my friend will argue that they knew they were pro se and it was a deliberate strategy and as we explore in the briefs, it's a seller's position that that was based on a mistake and a misunderstanding. But either way, the fact remains they were pro se at that time, and to conclude that a pro se party waived a waived an issue by not submitting a response when they did not understand a response was required, and they subjectively believed that somebody else was handling this for them mistakenly or otherwise, that that amounts to an abuse of discretion, particularly where it creates this situation where the only remaining issue in the case is effectively beyond the reach of a reasonable defense. And so it's a district district. Go ahead, judge. No, that's okay it's okay go right ahead. I was gonna say I thought that the district court. First of all, that there was a motion by their attorney to come off of the case and that the attorney represented to the district court that it had advised them about the consequences of failing to comply. And they went ahead and they just didn't do anything anyway. I mean, doesn't that figure into the analysis at some point. It does, Your Honor. Yes. And there's some, there's not countervailing evidence to say that their former counsel Mr Rosario didn't do what he said to the district court that he did, there's nothing to suggest his representation was untrue. And I should be very clear that we're not claiming that we do instead point to the affidavit of Daniela Bolzano, who is the, the person who is the only person amongst the sellers here who understand English at all. And her understanding the understanding that she communicated was that Mr Rosario was withdrawing that his motion to withdraw had been granted but that he was continuing to represent them in the interim, while they sought new counsel, and whether that was correct or not, that was the misunderstanding and ultimately quite an unfortunate one that the sellers were laboring under, and they at that point didn't understand that this response by them was required. And they also on advice from their Brazilian counsel were not opening the emails that my friend was sending them with the court filings during that period. And that again was a catastrophic mistake and misunderstanding on their part, it absolutely plays into the analysis. How does that, I mean, they're not doing even basic minimum origins here I mean how does that somehow then buy them an excuse for not pursuing this position. It makes their burden substantially heavier your honors I'm not suggesting that they did everything right far from it. I'm not suggesting that they have necessarily the, the best position there by any degree they they made huge mistakes and they do anything right. I mean you said you're not suggesting they did everything right but I'm wondering what did they do right. They ultimately when they when they eventually realized the significance of what happened and having not understood when Mr Osorio explained it to them that's certainly on them, but had once they came to that understanding, they then proceeded to engage a Brazilian attorney who's resident in the United States to help them find someone who could represent them in this case, ultimately Mr Gottlieb who then took over and began actively litigating on their behalf again. So that I would argue they did right once they realized that they took the appropriate corrective steps. So I guess the problem I'm having is the district court ordered or said in the order that it's ordered did not stay proceedings or modify any deadlines or obligations of the parties. You know, I just, it seemed it to me it's difficult to understand how they could have done nothing in the face of that. They did nothing in the face of that because of their misunderstanding at least as I understand the record is based on their misunderstanding about whether someone some attorney in the United States was representing them during that interim period while they search for new counsel to take over for him. And so the timeline is worth considering here. Mr Osorio's motion to withdraw was granted on I believe December 23 2019. And they had the obligation to meet these discovery deadlines by January 6, and then there's a case status conference a couple weeks later, and a number of other things take place before they ultimately wise up and become aware that they have this huge problem on their hands that they have to solve. And so, that relatively short turnaround time is when all this happens they weren't there in a state of latitude for months and months. There was a period of weeks where they were at the most maybe a month or a month and a half, where they misunderstood that they were not being represented that the case was proceeding a pace, and that they had obligations to meet, and the district court's determination that during that time they waived this issue by not filing a response when they did not understand subjectively and mistakenly but did not understand subjectively that a response was required was an abusive discretion, especially where it creates the district court rule that it was too late for the defendants to first make the argument about incidental damages in their proposed findings and conclusions. And at that time, the defendants were represented by counsel. So why did this district court get that wrong. Because at that point, Your Honor, it was one of two things. It was either a if you don't believe that the earth if one excuse me if one does not believe that the, the prior conduct was a waiver, then that was just a, you know, a renewal of that argument, but, and I see that my time is about to run out here may I have leave to continue going. Thank you, Your Honor. So, if you don't believe there was a waiver then it was just a renewal of that standing point. But if you do believe, or if one does believe that there was a waiver at an earlier point, then it was, it could be interpreted as just filing a belated response which the district court would have had discretion to allow, and which the district court under these circumstances would have abused its discretion and declining to allow. Right. Thank you very much. We'll give you your full time for rebuttal. Thank you. Thank you. Good morning Judge Jordan and may it please the court. If I may start with the issue that was the principal point of the discussion, because I think there are two points here that should not be be missed. Number one, I think overall on this record is I'm sure you all have read thoroughly. One can hardly imagine a judge being more patient and more conscientious in affording the respondents every opportunity than was Judge Meadowbrooks, number one. Number two, one of the reasons that he ruled that this argument was waived was because it had never been asserted, as Judge Jordan noted, until the proceedings were essentially concluded and the final hearing had taken place. And at the stage of submitting, finding his conclusions, as we cite in our papers, and as this court has held in North Point Travelers, that is too late. You can't raise it for the first time. They gilled the lily a bit on that argument in their appeal by saying, oh, well, look, you asserted in the complaint that you had either performed or satisfied or waived conditions. Certainly, anything brought up at the appellate stage for the first time is prohibited. In fact, this litigation has been acknowledged by Mr. Howard in his briefs and by Judge Meadowbrooks was vigorously contested for two years, during which they had counsel. This is not a matter of a pro se case. The affirmative defense, which is what he's talking about now, was not raised. In fact, they denied in their answer to the first amended complaint that there had been any waiver whatsoever, noting correctly that any such waiver had to be signed by both parties. Number two, they did not assert an affirmative defense, asserting that we could not get specific performance and damages. In fact, after their successor counsel came in and after they failed to do anything for months, and I'll get to that next, he filed a motion to set aside Judge Middlebrooks' entry of default. And in that motion, they said we have meritorious defenses to these claims. And that's one of the reasons you should vacate the default. And they didn't identify the defenses. They just referenced the ones that they had asserted in response to the first amendment complaint. Of course, none of those defenses, as I've noted, was the defense that we could not, under this contract, see specific performance and damages incidental to that. So they have had numerous times, when represented by counsel, both prior counsel and trial counsel, to raise this issue, and they did not. Now, I get into this only because it's been the subject of discussion, but I think appropriately so. It is, frankly, a misstatement to the court that these defendants did not realize that they were no longer being represented. And I know that you're not in a position here to say who's telling the truth, but you are in a position to decide whether Judge Middlebrooks abused his discretion in determining who was telling the truth. And before Judge Middlebrooks, as we note in our brief, is the fact that I, myself, received telephone calls and emails from Daniela Bolzano, who was fluent in English, telling me that they're looking for new counsel because they didn't have new counsel and they needed it, and they were still looking around. I even gave her an additional week of time to do that. That's not me testifying here. That's in the record. And that all happened in January, like, 9th and 10th, over a month before they say they first found this out. And even if you were to believe everything that has been said, and of course I'm not challenging Mr. Howard personally, but even if you were to believe all of that, the fact is that refusing to look at emails from the court and from us is completely the opposite of what you should be doing. You should be attentive, as Judge Rosenbaum said. Do something proactively. If they have a problem with not reading their email being bad advice, that's not something that should hurt GDSI. So Judge Middlebrooks was quite correct in saying that this was a defense that was waived. Let's assume that their argument about incidental damages is not waived or abandoned or forfeited. So they say that although Florida law allows a combination of specific performance and incidental damages, that can't happen in the context of this case with this contract. Can you respond to that? Of course, Your Honor. And by the way, the contract also says, as Judge Rosenbaum noted, that both specific performance and damages are allowed. And the proposition that Mr. Howard advances, that under this particular contract, you could either, as they have put in their briefs, accept the property subject to all of the misrepresentations and it's your tough luck, or you can walk away from the property. And those are not the only two options that are available. And that is dependent upon, and Florida recognizes that, as they actually understand you can get both. Particularly because, as we know, with specific performance, they have to satisfy, and they don't challenge this on appeal. They have to satisfy that this is a contract, the subject of which is a unique piece of property that is subject to being specifically enforced. So once you get to that point, we look to the conditions. What Section 3, and I think it was Judge Rosenbaum that said this, Section 3 basically gave an option to GDSI to walk away from the contract if the conditions, the closing, and it's important to remember that. These are conditions to closing. That's why the conditions, according to Section 3, had to be met prior to closing. Closing hasn't even existed, taken place in this case yet, because they have refused to turn over the shares. So Section 3 is a vehicle by which GDSI could say, you know, it's not closing yet, but they're not going to meet these conditions, and we can walk away. The representation and warranty in Section 5 is a representation that, looking back, as Judge Rosenbaum said, as of the date of the SBA, their financial statements revealed everything, and they had not violated the tax obligations. And that representation was as of the date of the SBA and as of the date of the closing. So reading this contract as a whole and consistent with Florida law, what this allowed GDSI to do was simple. Say, we want this company. We want this property. And we can insist on the contract going forward. We can insist on the closing. But we can waive this condition to closing. So there are two separate considerations here. One is waiving a condition to closing, and another one is waiving a misrepresentation, which did not occur here. As the American real equities case we cite says that—and this is a case where—and it really is no distinction here. In every contract, you presume that the representations and warranties are going to be met at closing. And this is a case where the buyer learned before the closing that there had been a misrepresentation. And the third DCA said the purchaser had a right to affirm the contract and take the property rather than to seek rescission. The purchaser has a right under the circumstances to seek specific performance and to seek damages for material misrepresentations. And in fact, the issue of incidental damages is different from the issue of contract damages. It is an equitable concept, which is why the discretion exercised by Judge Middlebrooks should be sustained. In the Quantum case, the Southern District of Florida, the court relied on the Will Borg v. Eisenberg case from Florida. It says damages awarded in specific performance are a way of compensation to adjust the equities between the parties and place them where they would have been had the contract been properly performed. So what we have here is you have these folks misrepresenting things in the contract, refusing to close. And we have to keep in mind here, as we plead in the complaint, they said, we are not closing. So we've had to sue them to compel a closing. And we did one of two things. We said either breach of contract or specific performance. Judge Middlebrooks said you got to pick one or the other. We picked specific performance with incidental damages. We never waived their obligation to adhere to that warranty. We simply said we are not going to let that prevent a closing. We will go forward with a closing, and we will seek incidental damages. Now, unless the court, and I'll just briefly say this, and if the court wants to ask questions of courts, the second point that they argue are the point on damages, not being speculative. The only speculation that they ask the court to engage is speculation that their acknowledged and admitted fines and obligations for overdue taxes will somehow be forgiven over the next 10 years. That's the kind of speculation that Judge Middlebrooks refused to engage in. They have not to this date, even before this court even proffered, that any of these fines and taxes do not exist and are not due. In fact, at the beginning of the hearing on damages, and notwithstanding the default, Judge Middlebrooks said, I am going to listen to what they have to say. I'll deal with it later, but I'm going to listen to what they have to say. Not once did they say, Judge, we've paid those taxes, or those taxes are not due. In fact, Jose Bolzano, the chief of Bolzano, testified to the opposite. He admitted that the taxes and the fines were due, but that he could take 10 years to maybe challenge them. The records that are available in Brazil establish that they owed more taxes than we even seek damages for in this case. There is, in fact, as we know, if there's any reason why we don't have a document saying these taxes are outstanding or not is because of their flagrant discovery violations and violations of the court's order, which they don't challenge as a proper abuse of discretion. So, unless the panel has some further questions for me, I will rest on our briefs. Thank you very much, Mr. Cyrus. Mr. Howard, you've got your remaining rebuttal time. Thank you, Your Honor. And so I'll begin where my friend left off and discuss the calculation of the damages. And it's absolutely true that we do not challenge the entry of the default as an appropriate sanction based on what Mr. Cyrus correctly characterizes as flagrant discovery violations. What the sellers did was wrong, and they deserved to experience some consequences from that. And they have. I could not stand before this court as an officer of this court and say anything different. That is just the plain truth that Judge Middlebrooks did not abuse his discretion on that. But the fact remains that there are elements of the damages calculation that if this court concludes that sellers must pay some incidental damages, and the sellers would then agree that it would be some nonzero quantity because the record plainly confirms that. But what the record doesn't do is allow that to the requisite degree of reasonable certainty, particularly where the calculation includes some amounts that are outright they maybe could revisit those hypothetically in the future. And throughout this damages calculation, the way GDSI has framed it is that while the sellers can't rule these damages out, so they have to pay them, but what the law requires is for GDSI as the plaintiff to rule those damages in and to prove by a preponderance of the evidence that those amounts are in fact owed. There are no challenges to the approximately $11 million for debt in excess of the agreed limit? No, Your Honor, there are not. There are none on appeal? No, Your Honor. If we agree that incidental damages are recoverable, in some respect, then they're getting at least $11 million. Yes, Your Honor, that's correct. And there would be elements that this court could extrapolate from the record that it has before it that would remain concrete within the context of the case. But if this court were to reverse on that issue, then this case would go back before the district court for, at the very least, new motion practice and most likely for a new evidentiary hearing because credibility determinations would probably be necessary. And GDSI has abandoned its opposition to the argument that the district court's exclusion of Sellers' expert accounting witness was erroneous because his late disclosure was substantially justified, so there will be expert testimony. There will be testimony about those tax liabilities that my friend was discussing that will make the calculation of incidental damages more refined going forward. The shares have not been transferred? They have not, Your Honor, no. I don't want to put you on the spot because you are not your client, but the portion of the award ordering the transfer of shares has not been challenged. It is not, Your Honor, no. Why is your client not here with unclean hands? I should clarify, Your Honor, that at the time of the hearing the shares had not been transferred, I do not have any understanding that they were transferred after that point. I guess I should make that qualification. But you don't know. As of today, you don't know. I don't know, Your Honor, but I have no reason to suspect that they were transferred. I also have no reason, particularized reason, that is to say, to suspect that they weren't. But if they weren't, then yes, my clients would be here with unclean hands. All right, thank you. Thank you both very, very much. Thank you, Your Honor. Thank you, Your Honor. We're in recess until tomorrow.